Filed 8/24/20  In re Christopher V. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re CHRISTOPHER V. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RUBY B.,<br><br>Defendant and Appellant. | F081080<br><br>(Super. Ct. Nos. JVDP-18-000187, JVDP-18-000188)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Boze, County Counsel, and Sophia Ahmad, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Detjen, Acting P.J., Franson, J. and Peña, J.

Ruby B. (mother) appeals from the juvenile court's summary denial of her Welfare and Institutions Code section 388[1] petition requesting reinstatement of reunification services. We find no error and affirm.

## FACTUAL AND PROCEDURAL HISTORY

*Background*

On July 16, 2018, two-year-old David S. was found sleeping on a filthy cushion in a park with his father Jimmy S. The two had slept in the park overnight and Jimmy S. had no water, food, clothing or shoes for the child. A social worker from the Merced County Human Services (agency) arrived to talk to Jimmy S., who said he had recently separated from mother, and David had been on a four-day visit with him. Jimmy S. had gotten to the park by riding a bicycle from Ripon to Hilmar, with David in the basket of the bicycle. Jimmy S. was arrested for child endangerment and David was placed into protective custody.

The social worker called mother, who said both her children, David and five-year-old Christopher V.,[2] were currently visiting Jimmy S. When told Christopher was not with Jimmy S., mother did not know where he was. Jimmy S. then said Christopher was with his sister, camping in Tuolumne County. Mother asked about her car, but Jimmy S. said he did not have it. At the agency's request, mother arrived at the park, where she began yelling at Jimmy S. Both mother and Jimmy S. admitted a history of drug use, mother saying she used marijuana daily, methamphetamine a week ago, and a valium, for which she did not have a prescription, the previous day. Jimmy S. claimed not to have used methamphetamine for three years, but admitted to marijuana use. Mother could not recall the last time she saw Christopher, as it had been "a while."

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

[2]     Christopher's father is Victor V. Neither Jimmy S. nor Victor V. are a party to this appeal.

Jimmy S.'s sister was contacted and confirmed Christopher was with her. She agreed to bring Christopher to the agency and, when she did, she reported that Jimmy S. began using methamphetamine, marijuana and alcohol at age 13, supplied by their mother. She reported that he continued to use methamphetamine and that she took care of both boys periodically when mother and Jimmy S. were not able to care for them. Jimmy S.'s sister reported witnessing both verbal and physical fighting between mother and Jimmy S., and that they also "smack the boys around." She described one incident in which mother was drunk and kicked Christopher, causing him to hit his head on a table and throw up. Mother admitted only to verbally fighting with Jimmy S.

Christopher was interviewed and said he gets spanked on the butt with a belt when he gets into trouble. He said both he and his brother get "smacked around." Christopher said his mother and Jimmy S. both use drugs and marijuana, and he knew the difference because they acted weird when they used drugs, which made him afraid. According to Christopher, Jimmy S.'s sister took care of them. Christopher also described mother and Jimmy S. as fighting a lot, that cops came and arrested Jimmy S. because mother was bruised and bleeding, and that Jimmy S. needed to go to jail because he "hurts his mommy." Christopher described mother as "punch[ing]" back at Jimmy S., as he "keeps being mean." Christopher said the fights scare him and his brother, especially when mother is holding David as they fight.

*Detention*

A section 300 petition was filed, alleging the children were at risk of harm due to mother and Jimmy S.'s substance abuse, domestic violence, chronic homelessness, and failure to provide medical care. The petition alleged that Jimmy S. was in custody and the whereabouts of Christopher's father, Victor V., was unknown. On July 18, 2018, the children were ordered detained; jurisdiction and disposition was set for August 15, 2018.

*Jurisdiction, Disposition and Transfer Out*

A report prepared for the jurisdiction/disposition hearing reported that mother and Jimmy S. were now living in Modesto. The report stated that mother had untreated mental health diagnoses of depression, anxiety, and attachment disorder since childhood, when she had been a foster child. She had stopped taking medication at age 17, and had been using illegal substances the entirety of the children's lives.

Mother denied allegations of physical and verbal domestic violence in her relationship with Jimmy S., stating Christopher's statement to the contrary was him "being five."

A day after the children were detained, mother tested positive for amphetamine, THC, Benzodiazepine, ecstasy, and methamphetamine. She was arrested for possession of drugs and paraphernalia about a week after the children were detained.

A subsequent transfer out report recommended transfer of the case to Stanislaus County, where mother and Jimmy S. were residing. Christopher was reported to be experiencing major anger and behavior issues, and had choked another student at school. After visits with mother and Jimmy S., he would get angry and punch cabinets and chairs in the foster home. He was assessed and approved for weekly counseling.

Mother, now 31 years old, had been in foster care beginning at age one due to her own mother's drug use and father's long-term incarceration. She reported drug use since she was 13. She admitted needing drug treatment but, as of October 10, 2018, had not yet begun and continued to use drugs. Jimmy S. was in a similar situation. Mother again denied physical domestic violence and, although she acknowledged constantly arguing with Jimmy S., she reported that, after the children were detained, they "realized that they needed to stay together."

The proposed plan for mother included domestic violence treatment, a mental health evaluation and treatment, a parenting program, and substance abuse treatment and testing. Programs available in Stanislaus County were referenced.

At the October 18, 2018, hearing, both mother and Jimmy S. appeared by telephone. Counsel for mother and Jimmy S. denied the allegations, but submitted on the reports. The juvenile court found the petition true and adopted the findings and orders, including the finding that mother's progress to date in alleviating the problems that led to removal was "none." The matter was ordered transferred to Stanislaus County, and mother and Jimmy S. were ordered to appear October 25, 2018, subsequently changed to October 26, 2018.

*Transfer In*

At the transfer-in hearing scheduled for October 26, 2018, neither parent appeared. The hearing was rescheduled several times, due to mother and Jimmy S.'s homelessness and difficulty in locating them, as well as the need to perfect ICWA notice. The hearing was eventually set for January 9, 2019.

The transfer in report requested that the juvenile court modify the plan approved by Merced County. Mother and Jimmy S. continued to be homeless, staying at hotels paid for by Jimmy S.'s SSI income and paternal grandmother. Mother and Jimmy S. had been visiting regularly, but on January 3, 2019, mother reported that father had been arrested and was in custody for old charges: auto theft, drug and firearm charges, and failure to appear.

Both children were placed in Tuolumne County with "a paternal relative" to Jimmy S. Christopher continued to have self-control and anger issues and had been suspended from kindergarten for pushing another child to the ground. An IEP was requested. He had also been referred for additional counseling due to sexual acting out behavior.

Mother and Jimmy S. had yet to participate in reunification services. They had not completed applications for Sierra Vista or had SUD assessment. After Jimmy S. was arrested, mother began the process of getting a SUD assessment, but arrived too late for her appointment. Mother and Jimmy S. were offered transportation to begin services, but

5.

asked only for bus passes. Neither mother nor Jimmy S. understood the need for domestic violence counseling. Since both mother and Jimmy S. had suffered childhood trauma and abuse, the modified plan added general counseling to address these issues.

Neither mother nor Jimmy S. appeared at the January 9, 2019, hearing, nor the rescheduled hearing on January 24, 2019. The juvenile court approved the modified plan. In February of 2019, Christopher's father, Victor V. was located, counsel appointed, and services offered. A six-month review was scheduled for April 12, 2019.

*Six-Month Review*

The six-month review report for a hearing on April 12, 2019, recommended that services continue for mother, Jimmy S. and Victor V. Mother was now in residential treatment and "just beginning to process the reasons for her substance use." But she was also reported to have codependency issues with Jimmy S. Both of them got into trouble for breaking the rules at their treatment centers by contacting each other.

When mother entered the treatment program in February of 2019, she tested positive for methamphetamine and marijuana. Due to mother's codependency on Jimmy S. and the issues that caused, her program was extended from 60 to 90 days. Mother had yet to complete an application for Sierra Vista services, including parenting, domestic violence classes, and individual counseling. The report recommended additional codependency counseling. The social worker called mother numerous times to remind her of court dates and encourage her to participate in services.

An addendum report indicated that mother was set to graduate from her treatment program and enter a sober living facility on May 1, 2019.

The children were moved to a foster home in Stanislaus County, where Christopher's aggressive behavior and defiance continued. Although mother was frustrated at visits with Christopher's behavior, she insisted she could control him if he was living with her at the clean and sober facility.

6.

The review hearing was eventually held on May 14, 2019, and the juvenile court adopted the recommendation and proposed reunification plan. A 12-month hearing was set for September 5, 2019.

*12-Month Review*

The report prepared for the 12-month hearing recommended termination of reunification services to mother, Jimmy S. and Victor V., and setting a section 366.26 hearing. Victor V. had done nothing on his case plan, refused to drug test, and cut off any contact with the agency. Jimmy S. had completed inpatient treatment and had one counseling session, but was arrested during a traffic stop on June 28, 2019, on outstanding warrants and transferred to jail.

Mother was disciplined at the sober and clean living facility when she had father come pick her up. She had been in the vehicle with father when he was stopped and arrested. Mother, at first, denied she was with father at the time. She then confessed, but did not understand why they could not be together if they wanted to be.

Mother was attending her substance abuse program and had remained sober, but she had trouble being truthful, did not have a support system, and was resistant to building one. She continued to have contact with Jimmy S., who was an active methamphetamine user, as well as others from her life when she was using, including her mother-in-law.

Mother completed her mental health assessment on June 11, 2019, and told the social worker she was found to be okay and did not need services. The social worker later learned that mother was referred to counseling for depression, but she refused the referral. She completed her referral on August 12, 2019, but had not yet followed through.

Mother's referral for individual counseling was sent in on December 6, 2018. Mother did not complete her application until March 21, 2019, and attended intake on April 2, 2019. At the time of the report, she had attended three counseling sessions and

7.

did not show for two. The sessions were intended to work on insight and accountability into the removal of her children.

After the social worker spoke to mother on August 9, 2019, and told her the recommendation to terminate services, mother finally admitted physical domestic violence with Jimmy S. Mother had attended four domestic violence group sessions and missed one. Mother had completed 10 parenting group sessions, one of 10 individual sessions, and cancelled one session. She had done one of three parent-child labs.

Mother visited consistently, but her parenting skills needed addressing and visits often did not go well. The boys often did not behave, mother would threaten them with a time-out, but not follow through or she would try to out-yell them. Negative comments about mother's parenting skills were made at 12 of her 21 reported visits.

Termination of services was recommended due to mother's limited growth and incomplete case plan. A contested hearing was set for October 1, 2019, at mother's request. In the interim, the juvenile court reduced mother's visits to twice monthly in person, with telephone or social media visits on the off weeks. On September 5, 2019, Jimmy S. had been sentenced to four years in county jail.

The report for the contested hearing stated that the children had been placed in separate relative homes. Mother had not yet followed through on her counseling for depression and mental health concerns. She had not completed all of her domestic violence classes and continued to vacillate on her relationship with Jimmy S., acknowledging, only after learning of his sentence, that she would have to continue without him. Mother did not show for an August 16, 2019, visit with the children, and two subsequent visit reports again said that her parenting skills needed improvement.

An addendum report indicated that mother had still not completed her domestic violence sessions and had failed to show, including the most recent class. She was just in the "beginning stages" of her codependency treatment.

At the contested hearing October 17, 2019, mother's counselor at Sierra Vista reported that mother was working on codependency, had "scratched the surface" of parenting and was about halfway through the program. Mother still needed 11 to 15 individual counseling sessions, nine individual parenting sessions and two parent-child labs. The domestic violence course was an additional, separate class.

Mother's NA sponsor testified that mother had completed six of the 12-step program in six months. The sponsor had seen mother at five or six meetings during the first three or four months of their relationship, but had not seen her for the last two or three months.

Mother's counselor at the drug treatment facility testified that mother was to graduate from the program in 60 days, but it was extended to 90 days because she thought mother would benefit from the additional time since it took her "a little bit longer" "to open up and trust, and be more receptive."

Mother's social worker had worked with mother for about a year. The social worker opined that the factors that brought the children into the system still had not changed and, if they were returned, the "same things" could happen again. The social worker testified no attempts were made to establish overnight visits with the children, as visits at the agency did not go well. Mother had not completed any aspect of her case plan.

Mother testified that her children were removed from her because she put "drugs first." When asked, mother said did not think her codependency on other people impacted her parenting. Mother testified that recovery, now several days more than nine months, was "awesome" and she had learned to cope with her triggers and traumas of the past. When asked by the juvenile court what her triggers were, mother said she no longer had any triggers.

The juvenile court, in ruling, noted the issues that brought the matter into dependency—substance abuse, domestic violence, and a failure to protect the children.

The juvenile court found mother's continued chaotic visits with the children, her lack of knowledge as to her triggers, and her only very recent acknowledgment of domestic violence, were all still concerns. The juvenile court found that, while mother visited regularly, she had not made significant progress in demonstrating how to deal with major codependency issues or understanding her triggers for substance abuse, nor made sufficient progress with domestic violence issues. Services were terminated as to mother, Jimmy S. and Victor V., and visitation for mother reduced to once per month. A section 366.26 hearing was set for March 2, 2020.

*Petition for Extraordinary Writ*

Mother filed a petition for extraordinary writ, arguing there was an insufficient showing of detriment and reasonable services were not offered. This court denied the petition by written opinion on January 22, 2020 (case No. F080258).[3]

*Section 366.26 Report*

The report prepared for the section 366.26 hearing recommended termination of parental rights and placement of the children for adoption by their current caretakers. The children were now placed in separate homes. Christopher had been in a non-relative home since September 22, 2019. He was thriving in the home and on track at school, but still had behavior issues at school, which were being addressed by the school and caregivers. His caregiver and prospective adoptive father is a paraprofessional at an elementary school, with experience supporting children with higher needs. Christopher was receiving weekly counseling. David, now age four, was placed with his paternal aunt, with whom he had been originally placed, and was thriving. He was also receiving weekly counseling.

Since termination of services, the children had visited mother three times. On two of the three visits, mother brought so much junk food that Christopher threw up after one

---

[3] We grant mother's request and take judicial notice of the record in that case.

visit and David became ill during another. During one of the visits, mother was not able to handle Christopher and staff had to intervene.

*Section 388 Petition*

On February 25, 2020, mother filed a section 388 petition, requesting reunification services be restarted. As a change of circumstance, mother alleged she had made extraordinary progress, remained sober, progressed to Phase 3 in her treatment program, continued in her classes and completed many of them. She attached many letters and certificates showing her involvement in various programs.

The petition alleged reinstating services would be in the best interests of the children because "reunification with the parent the children have known for many years would be ideal." Mother alleged her "hiccups in July and August of 2019" showed recovery and "learning from that."

On February 26, 2020, the juvenile court denied the petition without setting a hearing. The juvenile court checked the box indicating that the proposed order would not promote the best interests of the children. The juvenile court also attached a statement, explaining at length that the petition did not make a prima facie showing of best interest at this stage of the proceedings, as the stability of the children was the primary concern and delaying permanency was not in their best interests.

The juvenile court also noted that mother's petition did not present evidence that she had addressed all of the issues in the dependency case and the " 'escape mechanism' " of a section 388 petition at this stage of the proceedings was only available when a parent has "completed a reformation before parental rights have been terminated."

*Section 366.26 Hearing*

A week later, on March 2, 2020, the section 366.26 hearing was held. Mother's counsel made an offer of proof that, if mother were to testify, she would testify that she loved her children, and that visits were "awesome and very good" and the children "light up" when she enters the room and are sad when she leaves.

The juvenile court found mother had not met her burden under the beneficial parent-child relationship exception and terminated parental rights.

## DISCUSSION

Mother's only claim on appeal is that the juvenile court erred when it denied her an evidentiary hearing on her section 388 petition because the denial was based on an incorrect standard and not supported by the evidence. We disagree.

A petition to modify a juvenile court order under section 388 must allege facts showing new evidence or changed circumstances exist and that changing the order will serve the child's best interests. (§ 388, subd. (a)(1); *In re Nolan W.* (2009) 45 Cal.4th 1217, 1235.) A petitioner must make a prima facie showing of both elements to trigger an evidentiary hearing. (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) " 'A "prima facie" showing refers to those facts which will sustain a favorable decision if the evidence submitted in support of the allegations by the petitioner is credited.' " (*In re Josiah S.* (2002) 102 Cal.App.4th 403, 418.) Courts must liberally construe a section 388 petition in favor of its sufficiency. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309–310.) In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

We review the juvenile court's summary denial of mother's section 388 petition for abuse of discretion. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.) The denial must be upheld unless we can determine from the record that the juvenile court's decision "exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.) When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the juvenile court. (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

12.

Here, mother's reunification services were terminated at the October 17, 2019, 12-month review hearing when the juvenile court found that, while mother had visited the children regularly, she had not made significant progress in demonstrating how to deal with major codependency issues or understanding her triggers for substance abuse, nor had she made sufficient progress on the issue of domestic violence.

In mother's February 25, 2020, section 388 petition, she listed as changes from the 12-month status review hearing that she remained sober, was progressing to Phase 3 in her treatment program, and continued in her classes and, according to mother, had completed many of them. Mother attached various letters and certificates to her petition, consisting of a letter from the clean and sober facility that she had been there since May 1, 2019, and was now in Phase 3 of that program; reports showing negative drug tests; a letter showing participation in domestic violence victim's classes; meeting slips for a 12-step program from October through December 2019; a printout showing she had applied for admission to a junior college, and a letter indicating she had inquired about the fee for service counseling.

The juvenile court denied mother's petition, finding that there was "no prima facie showing that … mother's request is in the children's best interests." The juvenile court noted that children, ages two and five years old at the time of their removal, had been out of mother's custody for approximately 19 months and deserved permanency. The juvenile court further noted that the primary issues in this case were domestic violence and mother's codependency, with concerns as to mother's ability to implement the parenting techniques she was learning in counseling and her ability to understand how her codependency affected her children. In finding that delaying permanency was not in the children's best interests, the juvenile court stated, "There is no evidence presented by mother that all of those issues have been fully addressed. Mere completion of what mother has provided as to progress thus far in her 388 petition is not evidence of a completed reformation—but rather attempts at reformation."

Mother asserts that the juvenile court erred in summarily denying her petition because she established a prima facie showing of "real change" and best interest for her children. As evidence, mother points to the services she continued on her own after the juvenile court terminated services—namely, remaining sober, drug testing clean, participating in her parenting program, her progress in treatment, her participation in several months of domestic violence services, and her enrollment in junior college. Mother also noted that the juvenile court applied an incorrect standard when it found there was no "completed reformation," a standard she contends is not required to grant an evidentiary hearing.

We first note that we have no issue with the juvenile court's use of the term "complete reformation." In *In re Marilyn H., supra,* 5 Cal.4th 295, our Supreme Court addressed the ability to bring a section 388 petition on the eve of a termination of parental rights hearing, as mother did here. Noting that, when a parent is given a reasonable length of time to reunify and fails to do so, the child's interest in permanency and stability takes priority. However, even after focus has shifted from reunification, a section 388 petition provides a means for the court to address a legitimate change of circumstances while protecting the child's need for prompt resolution of his custody status. (*In re Marilyn H., supra*, at p. 309.) In *In re Kimberly F.* (1997) 56 Cal.App.4th 519, the court found such a hearing provides an " 'escape mechanism,' " but only for a parent who "complete[s] a reformation" after termination of reunification services, but before the actual permanency planning hearing. (*Id.* at p. 528.) Thus, we find the juvenile court did not utilize an incorrect standard in denying mother a hearing on her petition.

Furthermore, we find the juvenile court's denial of a hearing was not arbitrary, capricious, or patently absurd so as to constitute an abuse of discretion. Mother was required to show both changed circumstances and that the proposed modification (i.e. granting additional reunification services) was in Christopher and David's best interests.

14.

While mother contends otherwise, her year of sobriety and continued need to be in a sober living facility after a lifetime of substance abuse does not, in and of itself, constitute "changed circumstances." (See, e.g., *In re Clifton B.* (2000) 81 Cal.App.4th 415, 423–424 [affirming denial of section 388 petition filed on the day of the section 366.26 hearing; father's seven months of sobriety since most recent relapse "while commendable, was nothing new" and "was not enough to reassure the juvenile court that the most recent relapse would be his last," in light of long history of drug use and recurrent pattern of relapses]; *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 [similar holding; "To support a section 388 petition, the change in circumstances must be substantial"].) In contrast, we note, in *In re Aljamie D.* (2000) 84 Cal.App.4th 424, the parent seeking the return of her children had tested clean in random weekly drug tests *for over two years.* (*Id.* at p. 432 [reversing denial of evidentiary hearing]; see also *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413 [mother entitled to evidentiary hearing based on changed circumstances where petition alleged, inter alia, abstinence from substance abuse for more than a year, continued therapy at mother's own expense, and a declaration from court-ordered psychologist that mother exhibited no psychological impediment to parenting].)

Mother's circumstances were also still changing on the issues of domestic violence and codependency. Mother was both a victim and a perpetrator of domestic violence and was to complete a domestic violence perpetrator's course, which she did not continue after termination of services. Mother also provided no documentation or information that she was addressing her codependency issue since termination of services. And she was not attending mental health counseling to address her anxiety and depression. While she submitted a letter stating that she had asked for counseling, she had not actually attended counseling or showed any progress in that area.

At best, mother's circumstances are "changing," which is not sufficient to warrant an evidentiary hearing. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 48.)

15.

We also find no abuse of discretion on the part of the juvenile court in finding that the petition did not allege a prima facie showing that resumption of services would be in the best interests of Christopher and David. Mother's statement in the petition that "reunification with the parent the children have known for many years would be ideal," is merely conclusory and did not meet the prima facie threshold for requiring a hearing. As noted above, once the juvenile court terminated reunification services, the focus shifted " 'to the needs of the child for permanency and stability.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.)

Mother's petition did not address her relationship with the children, or their individual needs and how she could meet them. The juvenile court had before it the history of mother's case and could see the issues the children had dealt with due to mother's inability to properly parent them. It had before it the problematic visits mother had had and still had, especially with Christopher. The ruling denying the evidentiary hearing specifically noted the special needs of the children, the fact that these needs had led to various placements for them, and the fact that they were now being addressed in their current placements.

Given the record before us and Christopher and David's need for permanency and stability, we conclude the juvenile court did not abuse its discretion in finding mother's section 388 petition did not allege a prima facie showing of best interests of the children.

We find no error in the denial of mother's section 388 petition without a hearing and reject her claim to the contrary.

## DISPOSITION

The orders of the juvenile court are affirmed.

Appellant's request for judicial notice filed on June 8, 2020, is hereby granted.

16.